ANN WALSH BRADLEY, J. (dissenting).
 

 ¶44
 In 2010 an Enbridge oil spill in Michigan cost $ 1.2 billion and has resulted in "ongoing insurance coverage litigation."
 

 ¶45 The Dane County Board of Supervisors was mindful that running an oil pipeline is a dangerous business and sought to avoid such a result. Accordingly, to ensure that Enbridge provides adequate coverage in the event of a catastrophe, it included certain insurance conditions in Enbridge's conditional use permit for expansion of a pipeline through the County.
 

 ¶46 However, the legislature stepped in and passed
 
 Wis. Stat. §§ 59.69
 
 (2)(bs) and 59.70(25). These new provisions have preemptive effect on county action. They prohibit a county from requiring that an oil pipeline operator obtain additional insurance if the operator "carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." § 59.70(25).
 

 ¶47 The majority determines that Enbridge maintains the requisite insurance, and that therefore Dane County can require of it no more. Majority op., ¶2. In doing so, the majority endorses an unreasonable result through its interpretation of the word "carries" and departs from this court's precedent that defined "sudden and accidental."
 

 ¶48 I agree with the unanimous court of appeals that "Enbridge failed to demonstrate at any time that it carried sudden and accidental pollution liability insurance."
 
 Enbridge Energy Co., Inc. v. Dane Cty.
 
 , No. 2016AP2503 & 2017AP13, unpublished slip op., ¶78,
 
 2018 WL 2347124
 
 (Wis. Ct. App. May 24, 2018). Accordingly, I respectfully dissent.
 

 I
 

 ¶49 The majority errs in its interpretation of two key statutory terms-"carries" and "sudden and accidental." Accordingly, its determination that Enbridge "carries" the requisite insurance to trigger Act 55's preemption provisions is in error. As the court of appeals unanimously determined, Enbridge made no such showing.
 

 ¶50 Pursuant to
 
 Wis. Stat. § 59.70
 
 (25), "[a] county may not require an operator of an interstate hazardous liquid pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." In other words, if the pipeline operating company carries CGL insurance that includes coverage for "sudden and accidental" pollution liability, then a county may not require it to "obtain" additional insurance.
 
 [1]
 

 ¶51 Our essential task in this case is therefore to determine if Enbridge "carries" such insurance. To answer this question, we must look to the words of the statute.
 
 State ex rel. Kalal v. Circuit Court for Dane Cty.
 
 ,
 
 2004 WI 58
 
 , ¶45,
 
 271 Wis. 2d 633
 
 ,
 
 681 N.W.2d 110
 
 . If the meaning is plain, we need not inquire further.
 

 Id.
 

 ¶52 Two statutory terms are of particular note: "carries" and "sudden and accidental." With regard to the term "carries," the majority draws a distinction between "carrying" and "maintaining" insurance. Majority op., ¶23. In the majority's view, "the statutory text does not require an operator to
 'maintain' the specified insurance coverage[,]" and thus Enbridge need not demonstrate that it "carries" the requisite insurance at any time other than the discrete point in time at which the conditional use permit was issued.
 

 Id.
 

 ¶53 Such an interpretation leads to an absurd result. Interpreting "carries" to indicate a discrete moment in time appears to allow Enbridge to have no insurance at all provided that it previously carried insurance at the moment the conditional use permit was granted. Unlike the majority, I agree with the court of appeals that "when as here a county issues a conditional use permit that includes a produce-proof-on-demand requirement, then the operator must produce, on demand, proof of the insurance that triggers the insurance limitation."
 
 Enbridge Energy Co., Inc.
 
 , unpublished slip op., ¶73.
 

 ¶54 Here, Enbridge has made no showing that it "carries" the requisite insurance. As the court of appeals wrote, Enbridge "pointed only to coverage that was, at best, lapsing."
 
 Id.
 
 , ¶75.
 

 ¶55 Turning to the phrase "sudden and accidental," the majority determines that " 'sudden' in the context of
 
 Wis. Stat. § 59.70
 
 (25) applies a temporal meaning, such as something happening quickly, abruptly, or immediately." Majority op., ¶28. Applying this definition, it concludes that Enbridge's "time element" policy fulfills this requirement because its policy "provides coverage for claims 'arising from a pollution event that begins and is discovered within 30 days' after its occurrence 'and is reported to the insurance company within 90 days.' "
 

 Id.
 

 , ¶31
 
 . In the majority's view, such coverage "is not limited to sudden or quick events" and is therefore "broader than the statutorily-described insurance."
 

 Id.
 

 ¶56 This case, however, is not the court's first go-round with the term "sudden and accidental." In
 
 Just v. Land Reclamation, Ltd.
 
 ,
 
 155 Wis. 2d 737
 
 ,
 
 456 N.W.2d 570
 
 (1990), this court exhaustively examined the term in the context of an insurance policy. The Just court determined that "sudden and accidental" can reasonably be interpreted to mean both "abrupt or immediate" and "unexpected and unintended."
 

 Id.
 

 , at 741-42, 745-46
 
 ,
 
 456 N.W.2d 570
 
 .
 

 ¶57 The legislature is presumed to act with full knowledge of existing case law when it enacts a statute.
 
 Strenke v. Hogner
 
 ,
 
 2005 WI 25
 
 , ¶28,
 
 279 Wis. 2d 52
 
 ,
 
 694 N.W.2d 296
 
 . Accordingly, the legislature presumably enacted Act 55 with the knowledge that this court had previously interpreted the phrase "sudden and accidental" in
 
 Just
 
 .
 

 ¶58 However, the majority departs from the definition we provided in Just, reasoning that the term has a different meaning in the context of a statute than it does in an insurance policy. Majority op., ¶30. But why should this be the case when the court has provided a clear and workable definition of which the legislature is presumed to have full knowledge?
 

 ¶59 Why is the plain language of an insurance policy to be defined differently than the plain language of a statute? When we encounter undefined terms in both a statute and an insurance policy, we apply the plain language of the term.
 
 See
 

 Kalal
 
 ,
 
 271 Wis. 2d 633
 
 , ¶45,
 
 681 N.W.2d 110
 
 (explaining that "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' ") (citations omitted);
 
 Acuity v. Bagadia
 
 ,
 
 2008 WI 62
 
 , ¶13,
 
 310 Wis. 2d 197
 
 ,
 
 750 N.W.2d 817
 
 (setting forth
 that unambiguous policy language is interpreted "in accordance with the plain meaning of its provisions") (citation omitted).
 

 ¶60 Again, I would follow the lead of the unanimous court of appeals and apply the plain meaning definition of "sudden and accidental" we set forth in
 
 Just
 
 ,
 
 155 Wis. 2d 737
 
 ,
 
 456 N.W.2d 570
 
 .
 
 See
 

 Enbridge Energy Co., Inc.
 
 , unpublished slip op., ¶92.
 

 ¶61 Applying Just, Enbridge must demonstrate that the insurance it carries covers pollution events that are both "abrupt or immediate" and "unexpected and unintended." Enbridge's policy does not cover all events of these types. The "time element" nature of the policy means that pollution is only covered if it is discovered within 30 days and reported to the insurer within 90 days. Pollution discovered on the 31st day after it happened would not be covered, even if the pollution was "abrupt or immediate" or "unexpected and unintended." The statute requires that
 
 all
 
 "sudden and accidental" events be covered, yet Enbridge's "time element" policy constrains covered events based on when they are discovered and reported.
 

 ¶62 In sum, I determine that Enbridge did not demonstrate that it "carries" insurance that includes "sudden and accidental" coverage. The condition precedent to trigger the preemptive provisions of
 
 Wis. Stat. §§ 59.69
 
 (2)(bs) and 59.70(25) are therefore not fulfilled. Accordingly, I would affirm the court of appeals.
 

 ¶63 For the foregoing reasons, I respectfully dissent.
 

 See also
 

 Wis. Stat. § 59.69
 
 (2)(bs) ("As part of its approval process for granting a conditional use permit ..., a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law.").